1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11   DANIEL GERARDO VIERA,            CASE NO. CV 18-7438 SS

12                 Plaintiff,

13        v.
                                      **MEMORANDUM DECISION AND ORDER**
14   NANCY A. BERRYHILL, Acting
     Commissioner of Social
15   Security,

16                 Defendant.

17

18                              **I.**

19                         **INTRODUCTION**

20

21        Daniel Gerardo Viera ("Plaintiff") brings this action seeking

22   to overturn the decision of the Acting Commissioner of Social

23   Security (the "Commissioner" or "Agency") denying his applications

24   for Disability Insurance Benefits and Supplemental Security Income.

25   The parties consented, pursuant to 28 U.S.C. § 636(c), to the

26   jurisdiction of the undersigned United States Magistrate Judge.

27   (Dkt. Nos. 11-13).  For the reasons stated below, the Court AFFIRMS

28   the Commissioner's decision.

## II.

### PROCEDURAL HISTORY

On December 24, 2014, Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income, pursuant to Titles II and XVI of the Social Security Act (the "Act"), alleging a disability onset date of September 9, 2013. (AR 77-78, 151-60). The Commissioner denied Plaintiff's applications initially. (AR 77-88). Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which took place on August 14, 2017. (AR 34-52, 98-147). The ALJ issued an adverse decision on September 8, 2017, finding that Plaintiff was not disabled because there are jobs in the national economy that he can perform. (AR 15-26). On June 29, 2018, the Appeals Council denied Plaintiff's request for review. (AR 1-6). This action followed on August 24, 2018.

## III.

### FACTUAL BACKGROUND

Plaintiff was born on December 24, 1973. (AR 153). He was forty-three (43) years old when he appeared before the ALJ on August 14, 2017. (AR 39). Plaintiff graduated from high school and has one year of college. (AR 39). He is single and lives with his mother. (AR 41, 153). Plaintiff last worked in May 2010 as a warehouse manager. (AR 182-83). He alleges disability due to bipolar disorder, obsessive-compulsive disorder (OCD), and anxiety. (AR 182).

## A.   Plaintiff's Statements and Testimony

On March 16, 2015, Plaintiff submitted an Adult Function Report. (AR 204-12). He asserted that his OCD affects his ability to concentrate and focus on tasks. (AR 204, 208). His bipolar disorder causes depression and hypersomnia. (AR 204-05). He requires reminders to take care of personal needs and grooming. (AR 206). Plaintiff rarely goes outside and does not drive. (AR 207). While he complains of being socially withdrawn, he is able to enjoy social activities with friends and family. (AR 208-09). Plaintiff contends that his mental impairments affect his ability to talk, hear, see, complete tasks, concentrate, understand, and follow instructions. (AR 209). He asserts that his medications cause multiple side effects, including nausea, drowsiness, dizziness, hypersomnia, and anorexia. (AR 211).

At Plaintiff's hearing, he testified that his medications stabilize his mental impairments but cause drowsiness and hypersomnia. (AR 39-40, 43-44). He has trouble concentrating and staying focused. (AR 40). His mother drives him everywhere and gets him to his appointments on time. (AR 41, 44). He seldom goes shopping because he gets agitated, nervous, and frustrated around other people. (AR 42). Plaintiff acknowledged last using marijuana in 2012. (AR 38). He lost his driver's license after being arrested for driving under the influence of marijuana. (AR 44).

1    **B.    Treatment History**

2

3        Plaintiff began treating with Ernesto Cortez, D.O., in 2000.

4    (AR 185).  In November 2013, Dr. Cortez noted that Plaintiff had

5    not been seen since 2011. (AR 273).  Plaintiff requested medication

6    for anxiety and insomnia.  (AR 273).  He stated that Xanax had

7    worked well for him in the past.[1]  (AR 273).  He denied suicidal

8    ideations, thoughts, or plans.  (AR 273).  His current medications

9    included Abilify, Klonopin, and Prozac.[2]  (AR 273).  A neurological

10   examination was grossly normal.  (AR 274).  Dr. Cortez assessed

11   anxiety, stable on Alprazolam, and referred Plaintiff to outpatient

12   psychology.  (AR 274).  In December 2014, Plaintiff's bipolar

13   disorder was stable on Abilify, and his medications were continued.

14   (AR 269-70, 346-47).  In May 2017, Dr. Cortez assessed Plaintiff's

15   bipolar disorder as stable.  (AR 339-40).

16

17       Plaintiff began treating with Jorge Dubin, M.D., in December

18   2013.  (AR 186).  In February and March 2014, mental status

19   examinations were unremarkable, and Plaintiff denied any medication

20   side effects.  (AR 298, 304).  He was fully oriented, exhibited

21   normal  self-perception,  intact  memory,  mild  concentration

22   _____

23   [1]    Xanax (alprazolam)is a benzodiazepine that is used to treat
     anxiety  disorders,  panic  disorders,  and  anxiety  caused  by
24   depression.  <www.drugs.com> (last visited June 4, 2019).

25   [2]    Abilify (aripiprazole) is an antipsychotic medication used to
     treat schizophrenia and bipolar disorder.  Klonopin (clonazepam)
26   is a benzodiazepine used to treat panic disorder and agoraphobia.
     Prozac (fluoxetine)  is  a  selective  serotonin  reuptake  inhibitor
27   used to treat major depressive disorder and OCD.  <www.drugs.com>
     (last visited June 4, 2019).
28

4

impairment, and fair judgment and insight. (AR 304). Plaintiff reported improvements in OCD symptoms. (AR 298). Dr. Dubin diagnosed bipolar affective disorder, OCD, and a history of polysubstance abuse. (AR 304). In May 2014, Dr. Dubin emphasized that Plaintiff was doing well. (AR 297). Plaintiff denied mood swings. (AR 297). A mental status examination was unremarkable. (AR 297). Plaintiff's medications were continued. (AR 297). In July 2014, Plaintiff exhibited moderate concentration deficits and fair insight and judgment, but his mood, affect, psychomotor activity, and thought process and content were all normal. (AR 295). In October 2014, Plaintiff reported doing well and denied any mood swings. (AR 293). Seroquel helped him stay calm. (AR 293). A mental status examination demonstrated an anxious mood but otherwise intact memory, organized thought processes, clear thought content, and only mild concentration deficits. (AR 293).

In January 2015, Plaintiff reported doing better, being slightly depressed but with no psychotic symptoms. (AR 291). The mental status examination exhibited mild concentration deficits and fair insight and judgment. (AR 291). In March 2015, Plaintiff reported only rarely experiencing OCD symptoms. (AR 290). He was depressed but otherwise doing well. (AR 290). A mental status examination was unremarkable. (AR 290). Dr. Dubin continued Seroquel, Abilify, and Prozac.[3] (AR 290). In April 2015, Plaintiff

---

[3]    Seroquel (quetiapine) is an antipsychotic medication used to treat schizophrenia and bipolar disorder. <www.drugs.com> (last visited June 4, 2019).

exhibited an anxious mood but otherwise the examination was largely
normal. (AR 289).

On April 2, 2015, David K. Middleton, Ph.D., completed a
mental disorder questionnaire. (AR 281-87). He first treated
Plaintiff in December 2013. (AR 285). Dr. Middleton reported that
Plaintiff's grooming was "adequate but marginal," his mannerisms
"friendly but slightly odd," and his gait slow and deliberate. (AR
281). Plaintiff reported a history of OCD, depression, paranoia,
and mania since high school. (AR 281, 283). He described paranoia
ideation and generalized anxiety symptoms. (AR 282). On
examination, Plaintiff was oriented, his memory intact, and insight
and judgment were marginal. (AR 282). Plaintiff's intellectual
functioning, assessed with WAIS-III testing, was in the range of
average cognitive skills with no intellectual impairment. (AR
282). Plaintiff reported persistent paranoid delusions, but Dr.
Middleton found "no evidence of distortion in form of thought."
(AR 283). Dr. Middleton concluded that Plaintiff's mood swings
and delusions appear to be managed adequately with medication. (AR
283). Dr. Middleton diagnosed bipolar disorder and OCD and opined
that Plaintiff's condition is chronic, unlikely to improve. (AR
285).

In August 2015, Norma R. Aguilar, a board-eligible
psychiatrist, conducted a complete psychiatric evaluation on behalf
of the Agency. (AR 308-16). Plaintiff was appropriately dressed
and groomed, with normal posture and gait. (AR 308). Plaintiff
stated he has "obsessive compulsive disorder which I do rituals

and counting numbers and I also have bipolar depression." (AR 308). He reported nervousness, poor concentration, poor memory, paranoid feelings, insomnia, anorexia, racing thoughts, and low motivation. (AR 309). Plaintiff denied suicidal or homicidal ideations. (AR 309). He reported some benefits from his medications and monthly psychotherapy sessions. (AR 309). Plaintiff acknowledged a history of substance abuse, including alcohol, methamphetamine, and marijuana. (AR 310). Plaintiff is able to bathe and dress without assistance and to handle his own money. (AR 310). Plaintiff has good relationships with family and friends. (AR 310).

On examination, Plaintiff was cooperative, with normal body movements and eye contact. (AR 310). His mood was slightly depressed, with labile affect and no psychomotor retardation. (AR 310). His thought process was normal without looseness of association, thought disorganization, flight of ideas, thought blocking, tangentiality, or circumstantiality. (AR 310). Plaintiff's thought content was characterized by paranoid and grandiose delusions. (AR 310). He reported obsessions and tactile hallucinations. (AR 310). Plaintiff was alert, fully oriented, with intact memory, concentration, and calculation. (AR 311). Plaintiff's fund of information and intelligence and his insight and judgment were within normal limits. (AR 311). Dr. Aguilar diagnosed bipolar disorder, OCD, and polysubstance abuse, in remission. (AR 311). She opined that Plaintiff has no limitations in his ability to follow simple and detailed oral and written instructions; to interact with the public, coworkers, and

supervisors; and to comply with work rules, such as safety and attendance. (AR 312). Plaintiff is mildly limited in his ability to respond to changes in a routine work setting and moderately limited in his ability to respond to work pressures. (AR 312).

In December 2015, Plaintiff reported to Dr. Dubin that he was feeling better, without any nervousness or anxiety. (AR 326). His sleep was okay and his OCD under control without any side effects from his medications. (AR 326). Other than a mild impairment in concentration, a mental status examination was unremarkable. (AR 326). In April 2016, Plaintiff's psychomotor control, thought process, thought content, memory, and concentration were within normal limits. (AR 324). In October 2016, Plaintiff exhibited moderate concentration deficits, anxious mood, and fair insight/judgment but otherwise a mental status examination was within normal limits. (AR 322). In May 2017, Plaintiff reported worsening symptoms, but other than moderate concentration deficits and poor insight/judgment, a mental status examination was largely unchanged. (AR 318). Dr. Dubin noted a moderate impairment in concentration, but Plaintiff had calm psychomotor activity, clear thought content, and intact memory. (AR 318). Dr. Dubin diagnosed OCD, major depressive disorder, and history of polysubstance abuse. (AR 318). He prescribed fluoxetine, quetiapine and buspirone and discontinued aripiprazole. (AR 318).

**C.    State Agency Consultants**

On September 17, 2015, Robert Liss, Ph.D., a State agency consultant, evaluated the mental health records and concluded that Plaintiff's affective and anxiety disorders are severe impairments. (AR 59).  He opined that Plaintiff has a mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace.  (AR 59).  Dr. Liss concluded that Plaintiff is moderately limited in his ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; work in coordination with or in proximity to others without being distracted by them; and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  (AR 61-62).

**IV.**

**THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents the claimant from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months.  Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing

work previously performed or any other substantial gainful employment that exists in the national economy. <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1)  Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2)  Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3)  Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.

(4)  Is the claimant capable of performing his past work? If so, the claimant is found not disabled. If not, proceed to step five.

(5)  Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

*Tackett*, 180 F.3d at 1098-99; see also *Bustamante v. Massanari*,
262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-
(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four
and the Commissioner has the burden of proof at step five.
*Bustamante*, 262 F.3d at 953-54. Additionally, the ALJ has an
affirmative duty to assist the claimant in developing the record
at every step of the inquiry. Id. at 954. If, at step four, the
claimant meets his or her burden of establishing an inability to
perform past work, the Commissioner must show that the claimant
can perform some other work that exists in "significant numbers"
in the national economy, taking into account the claimant's
residual functional capacity ("RFC"), age, education, and work
experience. *Tackett*, 180 F.3d at 1098, 1100; *Reddick*, 157 F.3d at
721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). The Commissioner
may do so by the testimony of a VE or by reference to the Medical-
Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P,
Appendix 2 (commonly known as "the grids"). *Osenbrock v. Apfel*,
240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both
exertional (strength-related) and non-exertional limitations, the
Grids are inapplicable and the ALJ must take the testimony of a
vocational expert ("VE"). *Moore v. Apfel*, 216 F.3d 864, 869 (9th
Cir. 2000) (citing *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir.
1988)).

# V.

## THE ALJ'S DECISION

The ALJ employed the five-step sequential evaluation process and concluded that Plaintiff was not disabled within the meaning of the Act. (AR 15-27). At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since September 9, 2013, the alleged onset date. (AR 17). At step two, the ALJ found that Plaintiff's bipolar disorder, OCD, and history of drug abuse are severe impairments. (AR 17). At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of any of the listings enumerated in the regulations. (AR 17-20).

The ALJ then assessed Plaintiff's RFC and concluded that he can perform a full range of work at all exertional levels but with the following nonexertional limitations: "noncomplex routine tasks, no tasks requiring hypervigilance, not responsible for the safety of others, no jobs requiring significant teamwork." (AR 20). At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (AR 25). Based on Plaintiff's RFC, age, education, work experience, and the VE's testimony, the ALJ determined at step five that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including hand packager, cleaner, and store laborer. (AR 25-26). Accordingly, the ALJ found that Plaintiff was not under a disability, as defined by the Act, from September 9, 2013, through the date of the decision. (AR 26-27).

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole.  Garrison v. Colvin, 759 F.3d 995 (9th Cir. 2014) (citing Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006)); Auckland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance."  Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)).  It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion."  Id. (citing Jamerson, 112 F.3d at 1066; Smolen, 80 F.3d at 1279).  To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'"  Auckland, 257 F.3d at 1035 (citing Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner.  Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y, 44 F.3d 1453, 1457 (9th Cir. 1995)).

Plaintiff raises a single claim for relief.  He contends that the ALJ impermissibly rejected his subjective symptom testimony. (Dkt. No. 22 at 5-12).

Plaintiff testified that he is unable to work due to deficits in concentration and focus, and being fearful, agitated, or frustrated when around other people.  (AR 40-44).  His medications have helped stabilize his symptoms but cause drowsiness and hypersomnia side effects.  (AR 39-40, 43-44).

When assessing a claimant's credibility regarding subjective pain or intensity of symptoms, the ALJ must engage in a two-step analysis.  Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine if there is medical evidence of an impairment that could reasonably produce the symptoms alleged. Garrison, 759 F.3d at 1014.  "In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  Id. (emphasis in original) (citation omitted).  "Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof."  Id. (citation omitted).

If the claimant satisfies this first step, and there is no evidence of malingering, the ALJ must provide specific, clear and

14

convincing reasons for rejecting the claimant's testimony about the symptom severity. <u>Trevizo</u>, 871 F.3d at 678 (citation omitted); <u>see also</u> <u>Smolen</u>, 80 F.3d at 1284 ("[T]he ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so."); <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 883 (9th Cir. 2006) ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."). "This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases." <u>Garrison</u>, 759 F.3d at 1015 (citation omitted).

In discrediting the claimant's subjective symptom testimony, the ALJ may consider the following:

(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

<u>Ghanim v. Colvin</u>, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted). Inconsistencies between a claimant's testimony and

conduct, or internal contradictions in the claimant's testimony, also may be relevant.  Burrell v. Colvin, 775 F.3d 1133, 1137 (9th Cir. 2014); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997).  In addition, the ALJ may consider the observations of treating and examining physicians regarding, among other matters, the functional restrictions caused by the claimant's symptoms.  Smolen, 80 F.3d at 1284; accord Burrell, 775 F.3d at 1137.  However, it is improper for an ALJ to reject subjective testimony based "solely" on its inconsistencies with the objective medical evidence presented.  Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (citation omitted).

Further, the ALJ must make a credibility determination with findings that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."  Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (citation omitted); see Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) ("A finding that a claimant's testimony is not credible must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.") (citation omitted).  Although an ALJ's interpretation of a claimant's testimony may not be the only reasonable one, if it is supported by substantial evidence, "it is not [the court's] role to second-guess it."  Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ provided multiple, specific, clear, and convincing reasons, supported by evidence in the record, to find Plaintiff's complaints of disabling mental symptomology only partially credible. (AR 18-19, 21-24). These reasons are sufficient to support the Commissioner's decision.

First, the ALJ found that Plaintiff's statements were internally inconsistent. (AR 18-19, 21). "[T]he ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012); see Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) ("ALJ may engage in ordinary techniques of credibility evaluation, such as . . . inconsistencies in claimant's testimony"); accord 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). While Plaintiff asserted that his medications cause side effects, including drowsiness and hypersomnia (AR 39-40, 43-44, 211), he consistently denied medication side effects to his treatment providers. In January, February and March 2014; December 2015; April, July and October 2016; and February and May 2017, Plaintiff reported "no side effects" from his medications to Dr. Dubin. (AR 298, 299, 304, 318, 320, 322, 323, 324, 326). Dr. Cortez did not note any adverse reactions from Plaintiff's medications. (AR 270, 272, 339, 342, 345, 355). Dr. Middleton reported that Plaintiff "tolerate[s] well" his medications with "mild benefit noted." (AR 285). At his consultative examination, Plaintiff reported some benefit from his medications but did not mention any serious side effects. (AR 309). Further, despite testifying to having trouble getting along with others, Plaintiff

acknowledged being able to enjoy social activities with friends and family. (Compare AR 42, with id. 208-09). Similarly, Plaintiff told Dr. Aguilar that he has good relationships with family and friends. (AR 310). Finally, despite Plaintiff asserting that he is fearful, agitated, and frustrated around other people (AR 40-44), the medical record demonstrates generally normal presentations to treatment providers and examiners, without any mentions of fear, agitation, or frustration. (AR 19, 264-367). All of these inconsistencies diminish Plaintiff's credibility. (AR 18-19, 21).

Second, the ALJ found that Plaintiff exhibited a "good response to prescribed treatment, which consisted of routine medication management." (AR 18; see id. 19, 21). "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006). Plaintiff consistently reported that his medications were helping him. In November 2013, he stated that Xanax helped control his anxiety and insomnia. (AR 273-74). In October 2014, he reported that Seroquel helped him stay calm and denied any mood swings. (AR 293). In March 2015, Plaintiff reported only rarely incurring OCD symptoms. (AR 290). He told Dr. Aguilar that his medications and monthly psychotherapy sessions were helpful. (AR 309). In December 2015, Plaintiff reported to Dr. Dubin that he was feeling better, without any nervousness or anxiety, and that his OCD was under control from his medications. A good response to treatment supports an adverse credibility finding. See Crane v. Shalala, 76 F.3d 251, 254 (9th Cir. 1996)

18

("evidence suggesting that [the claimant] responded well to treatment" supports an adverse credibility finding). Similarly, Plaintiff's treating providers noted positive responses to medication. In November 2013, Dr. Cortez assessed Plaintiff's anxiety as stable on Xanax. (AR 274). In December 2014 and May 2017, Dr. Cortez assessed Plaintiff's bipolar disorder as stable on Abilify. (AR 269-70, 339-40, 346-47). In May 2014, Dr. Dubin emphasized that Plaintiff was doing well on his medications. (AR 297). In April 2015, Dr. Middleton concluded that Plaintiff's mood swings and delusions were managed adequately with medications. (AR 283).

Finally, the ALJ found that the medical record "demonstrates minimal evidence of significant mental status abnormalities." (AR 18; see id. 19, 21-24). While inconsistencies with the objective medical evidence cannot be the sole ground for rejecting a claimant's subjective testimony, it is a factor that the ALJ may consider when evaluating credibility. Bray, 554 F.3d at 1227; Burch, 400 F.3d at 681; Rollins, 261 F.3d at 857; see SSR 16-3p, at *5 ("objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities"). In November 2013, a neurological examination was normal. (AR 274). In February and March 2014, mental status examinations were largely normal: Plaintiff was fully oriented, exhibited normal self-perception, intact memory, mild concentration deficits, and fair judgment and insight. (AR 304). In July 2014, Plaintiff exhibited moderate

concentration deficits and fair insight and judgment, but his mood, affect, psychomotor activity, and thought process and content were all normal. (AR 295). In October 2014, a mental status examination demonstrated an anxious mood but otherwise intact memory, organized thought processes, clear thought content, and only mild concentration deficits. (AR 293). In March and April 2015, Plaintiff exhibited an anxious mood but otherwise the mental status examinations were largely normal. (AR 289, 290). In April 2015, Dr. Middleton tested Plaintiff's intellectual functioning and concluded that his cognitive skills were normal with no intellectual impairment. (AR 282). While Plaintiff reported persistent paranoid delusions, Dr. Middleton found "no evidence of distortion in form of thought." (AR 283). In August 2015, Dr. Aguilar found that Plaintiff's mood was slightly depressed with labile affect but no psychomotor retardation. (AR 310). Plaintiff's thought process was normal; he was alert, fully oriented, with intact memory, concentration, and calculation. (AR 311). His fund of information and intelligence and his insight and judgment were within normal limits. (AR 311). In December 2015, other than a mild concentration deficit, a mental status examination was unremarkable. (AR 326). In April 2016, Plaintiff's psychomotor control, thought process and content, memory, and concentration were all within normal limits. (AR 324). In May 2017, Plaintiff exhibited moderate concentration deficits, anxious mood, labile affect, and poor insight/judgment, but calm psychomotor activity, clear thought content, intact memory, full orientation, normal self-perception, and normal speech. (AR 318).

Plaintiff contends that the ALJ failed to acknowledge that his treating physicians "noted impairment in concentration, mood, and affect." (Dkt. No. 22 at 5). To the contrary, throughout his opinion, the ALJ noted that on occasion, Plaintiff's symptoms included mild to moderate concentration deficits, fair judgment and insight, depressed mood, and labile affect. (AR 19, 21, 22, 23). Moreover, the ALJ found that Plaintiff's bipolar disorder and OCD are severe impairments. (AR 17). While the "evidence" cited by Plaintiff supports the various diagnoses he has received, it does not support his allegations of debilitating symptoms. The mere existence of these impairments does not provide any support for the disabling limitations alleged by Plaintiff. Indeed, "[t]he mere existence of an impairment is insufficient proof of a disability." Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993); see Key v. Heckler, 754 F.2d 1545, 1549 (9th Cir. 1985) ("The mere diagnosis of an impairment . . . is not sufficient to sustain a finding of disability.").

Furthermore, the ALJ did not completely reject Plaintiff's testimony. (AR 21). Indeed, the ALJ gave less than full weight to the State agency physician's assessment and the consultative examiner's opinion because they did not have the benefit of Plaintiff's hearing testimony. (AR 23-24) (ALJ finding "moderate social restrictions based on the totality of the evidence, including [Plaintiff's] testimony, as well as the treatment notes received at the hearing level"). Based partially on Plaintiff's subjective statements, the ALJ found that Plaintiff has moderate limitations in understanding, remembering, or applying

21

information; in interacting with others; and with regard to concentrating, persisting, or maintaining pace. (AR 18-19). The ALJ accommodated Plaintiff's bipolar disorder and OCD and his moderate difficulties in social functioning, in understanding and applying information and in concentration, persistence, or pace by restricting him to noncomplex routine tasks, no tasks requiring hypervigilance, not responsible for the safety of others, no public interaction, and limited teamwork. (AR 20). While these limitations preclude Plaintiff from performing any past relevant work, the VE opined that there are still jobs in the national economy that Plaintiff can perform. (AR 25-26, 47-50).

In sum, the ALJ offered clear and convincing reasons, supported by substantial evidence in the record, for his adverse credibility findings. Accordingly, because substantial evidence supports the ALJ's assessment of Plaintiff's credibility, no remand is required.

## VIII.

## CONCLUSION

Consistent with the foregoing, IT IS ORDERED that Judgment be entered AFFIRMING the decision of the Commissioner. The Clerk of the Court shall serve copies of this Order and the Judgment on counsel for both parties.

DATED: June 6, 2019

                                        /S/
                                SUZANNE H. SEGAL
                                UNITED STATES MAGISTRATE JUDGE

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS OR ANY OTHER LEGAL DATABASE.**